**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**ALICE M. McCANS,**
a/k/a Alice M. Martinez,

Plaintiff,

v. No. 07-CV-0606 BB/LCS

**CITY OF TRUTH OR CONSEQUENCES, *et al.*,**

Defendants.

# MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on motions for summary judgment submitted by Defendants, the City of Truth or Consequences ("T or C"), the Sierra County Regional Dispatch Authority ("the SCRDA"), Russ Peterson, and Eloy Martinez (collectively, "the defendants"). (Docs. #118 and #124). The plaintiff is Alice M. McCans ("the plaintiff" or "Ms. McCans"). For the reasons set forth below, the defendant Eloy Martinez's motion for summary judgment is GRANTED. The remaining defendants' motion for summary judgment is GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND

The SCRDA operates the emergency dispatch center for the City of T or C, the Village of Williamsburg, and the Village of Elephant Butte. The SCRDA was formed through a Joint Powers Agreement between Sierra County, T or C, Williamsburg, and Elephant Butte. The SCRDA is governed by a board of six directors, two from T or C, two from Sierra County, one

from Williamsburg, and one from Elephant Butte. During her tenure, Ms. McCans was the SCRDA's sole employee. Russ Peterson was the chief of the T or C police and was thus a voting member of the SCRDA board for all times relevant here. Eloy Martinez was a deputy district attorney for Sierra County who served as a part-time legal advisor to the SCRDA board.

The SCRDA board hired Ms. McCans as an administrator. She began working in November 2002 and she resigned in July 2005. Ms. McCans' job duties included taking minutes at the SCRDA's board meetings. She was not a board member and had no voting rights.

Ms. McCans claims that throughout her tenure, Mr. Peterson made her the target of several inappropriate sexual statements. For example, Mr. Peterson allegedly said to Ms. McCans, "hmm, you look gorgeous," "wow, that outfit fits you perfect, you're going to give this old man a heart attack," "oh, you make me quiver when you walk in, when you walk by," "I want you to know the only reason you have this job is because of your outstanding beauty," "I want to go home and take a shower with you," and "you are so gorgeous, you drive me crazy; I want you so badly." (Def.'s Mot. S.J., Doc. # 124 at 8).

The record is ambiguous on whether and how Ms. McCans responded to these comments. She did, however, speak to Mr. Peterson with affection several times, referring to him as "darling," expressing her feelings of friendship for Mr. Peterson, and saying that he had "NEVER NEVER done anything to offend" her. (Def.'s Mot. S.J., at Exh. 4). According to Ms. McCans, she did not rebuff Mr. Peterson's amorous comments because she was intimidated by him, she felt that he was "vindictive," that he could adversely alter her work conditions, and she wanted "to stay on his good side." (McCans Dep. 571:7-19, Jan. 14, 2008). Despite Mr. Peterson's alleged harassment, Ms. McCans acknowledges that her salary was never reduced, she never

received negative job evaluations, nor was she ever reassigned or demoted. (McCans Dep. 553:21-554:3, 565:24-566:7).

The SCRDA adopted a sexual harassment policy during Ms. McCans' tenure, which she helped draft. (McCans Dep. 555:7-17). This policy directs an employee who feels subjected to sexual harassment to file a formal written complaint with his or her immediate supervisor or the department administrator. (Def.'s Mot. S.J., at Exh. 2).

Ms. McCans' first complaint to the SCRDA about Mr. Peterson's alleged sexual harassment came on September 23, 2004. (Pl.'s Resp. Mot., Doc. #138 at pg. 12). Ms. McCans then confronted Mr. Peterson to discuss the harsh and sexual language to which he had subjected her, and she requested the presence of David Martinez, the chairman of the SCRDA board. (McCans Dep. 271:23-272:5); (David Martinez Dep. 39:1-40:15, Apr. 8, 2008). At that meeting, Mr. Peterson acknowledged sending e-mails with sexual content to Ms. McCans. (David Martinez Dep. 40:13-15). Just after the meeting, David Martinez assured Ms. McCans that he would "follow up and take care" of the problems Mr. Peterson was causing. (McCans Dep. 565:16-22). Moreover, one week after the meeting, Mr. Peterson sent Ms. McCans an e-mail apologizing for his inappropriate behavior. (Pl.'s Resp. Mot., at Exh. G). Based on David Martinez's assurances and Mr. Peterson's contrite e-mail, Ms. McCans felt the concerns she had expressed at the meeting were adequately addressed. (McCans Dep. 555:21-24).

By May 2005, however, Ms. McCans claims Mr. Peterson's inappropriate behavior had escalated anew. (McCans Dep. 573:4-12). So she again complained to David Martinez, as well as to Richard Ramsey, the mayor of Elephant Butte, and the Equal Employment Opportunity Commission ("the EEOC"). (Pl.'s Resp. Mot., at Exh. F). In her complaint to Mayor Ramsey,

Ms. McCans alleged inappropriate behavior by Mr. Peterson spanning over the course of two years; she requested that Mr. Peterson be prohibited from having contact with her or "affiliation with [her] job;" she requested that Mr. Ramsey remove Mr. Peterson from the SCRDA board; and she concluded that she could "no longer withtake (sic) the sexual harassment." *Id.*

Though Mr. Ramsey lacked the power to unilaterally remove Mr. Peterson from the SCRDA board, he convened a special meeting on June 14, 2005 at which the board resolved to keep both Mr. Peterson and Ms. McCans from attending board meetings until an investigation into the allegations could be completed. (Pl.'s Resp. Mot., at 14). Ten days later, on June 24, 2005, Ms. McCans submitted her notice of resignation, effective July 29, 2005. *Id.* Ms. McCans alleges that the board's decision to suspend her constituted retaliation for her complaints. *Id.* She also alleges that Mr. Peterson retaliated against her by directing his subordinates on the T or C police force to arrest her daughter, Jennifer Ruiz, on charges of battery. *Id.* at 14-15. The defendants, however, deny that the board's action toward Ms. McCans on June 14, 2005 was retaliatory. (Def.'s Mot. S.J., Doc. #124 at 14). Also, the defendants contend that Ms. Ruiz's arrest was unrelated to Ms. McCans' complaints, and that Mr. Peterson was not involved in the decision to arrest Ms. Ruiz. *Id.*

As for Eloy Martinez, Ms. McCans alleges that he too sexually harassed her by, among other things, making sexually suggestive comments and gestures. (Def. Eloy Martinez's Mot. S.J., Doc. #118 at 2). In particular, Ms. McCans testifies that Eloy Martinez came into her office multiple times and said "some not very nice things" and did "something that [she] found repulsive." (McCans Dep. 197:2-13; 199:3-5).

In 2004, it was Ms. McCans who first approached Eloy Martinez to ask whether he would serve as a legal advisor to the SCRDA. *Id.* at 1-2. He agreed and provided occasional legal advice to the board in 2004 and 2005. *Id.* Eloy Martinez was never a member of the board and his employer was always the Sierra County district attorney's office. *Id.* When Ms. McCans complained of Mr. Peterson's sexual harassment to David Martinez, Mayor Ramsey, and the EEOC, she also wrote a letter to Clint Welborn, the district attorney of Sierra County. In that letter she complained of Eloy Martinez's harassing behavior and requested his removal as the SCRDA board's legal advisor. (Def. Eloy Martinez's Mot. S.J., Doc. # 118 at 5). The board never removed Eloy Martinez, however, because he resigned from his position as its legal advisor during its special meeting in June 2005. (McCans Dep. 303:10-14).

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) governs motions for summary judgment. Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2007). Also, the trial court must review the evidence presented in the light most favorable to the non-moving party—the plaintiff in this case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Yet the non-moving party may not avoid summary judgment by resting on mere allegations. *Id.* at 248.

**Discussion**

Ms. McCans brings multiple legal claims. Her first theory is that the SCRDA and T or C violated Title VII of the Civil Rights Act of 1964 ("Title VII") by creating a hostile work environment and discriminating against her based on her sex. Second, she alleges that the

SCRDA's and T or C's sex discrimination led to her constructive discharge under Title VII. Third, Ms. McCans, a Hispanic woman, sues under 42 U.S.C. § 1981 ("Section 1981"), alleging race discrimination by all the defendants. Fourth, she claims constructive discharge under Section 1981 based on alleged race discrimination by all the defendants. Fifth, Ms. McCans sues Russ Peterson and Eloy Martinez under 42 U.S.C. § 1983 ("Section 1983"), alleging First Amendment retaliation. The plaintiff next sues Russ Peterson and Eloy Martinez under Section 1983, alleging sex discrimination in violation of the Fourteenth Amendment's Equal Protection Clause. Finally, she sues Russ Peterson and Eloy Martinez under Section 1983, alleging race discrimination in violation of the Fourteenth Amendment's Equal Protection Clause.

**I. Hostile Work Environment Claim Against T or C and the SCRDA**

Ms. McCans claims that T or C and the SCRDA created a hostile work environment in violation of Title VII. Title VII proscribes employers from engaging in employment practices that permeate the workplace with "discriminatory intimidation, ridicule, and insult" that are severe or pervasive enough to alter the conditions of the victim's employment and create a working environment that is both subjectively and objectively abusive. 42 U.S.C. § 2000e-2(a)(1); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 23 (1993) (holding plaintiff asserting a hostile work environment claim must show, under the totality of circumstances, that her employer engaged in or permitted conduct sufficiently abusive to affect her job performance).

As the statutory language indicates, Title VII hostile work environment claims present two threshold questions. First, to be liable, the defendants named in this count must qualify as Ms. McCans' "employers." *See* 42 U.S.C. § 2000e(b) (defining employer as, among other things, "governments, governmental agencies, and political subdivisions" that have "fifteen or

more employees"). Second, the plaintiff must establish that the conduct either engaged in or tolerated by the employer was severe or pervasive. *Harris*, 510 U.S. at 23.

On the "employer" issue, it is undisputed that Ms. McCans was the only employee of the SCRDA. The SCRDA therefore does not fall under the definition of "employer" for purposes of Title VII, as it did not have fifteen or more employees.[1] As for T or C, it had fifteen or more employees, and it contributed 45% of the SCRDA's operating budget. Based on these facts, Ms. McCans argues that T or C was her "employer" under Title VII. This assertion is arguable, as determining whether T or C was in fact Ms. McCans' employer for purposes of Title VII would require a thorough examination of agency principles. *See, e.g.*, *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 72 (1986) (holding that courts should look to agency principles for guidance in determining whether an entity qualifies as an "employer" under Title VII). Similarly, it is also not obvious on the evidence Ms. McCans has presented that the alleged discrimination was severe or pervasive enough to create a work environment that was subjectively and objectively abusive. The Court need not resolve these difficult issues, however, because both T or C and the SCRDA are entitled to an affirmative defense to Ms. McCans' hostile work environment claim, even assuming they would be otherwise liable under Title VII.

Employers may be vicariously liable for the harassing acts of their supervisory employees. *See Mallison-Montague v. Pocrnick*, 224 F.3d 1224, 1232 (10th Cir. 2000); *see also Weger v. City of Ladue*, 500 F.3d 710 (8th Cir. 2007). Yet an employer that did not take a

---

[1]Title VII's statutory requirements are jurisdictional in nature. *See, e.g.*, *Owens v. Rush*, 636 F.2d 283, 287 (10th Cir. 1980). Thus, even though the defendants never raised the argument, this Court is required to point out that Title VII does not apply to the SCRDA. This is yet another reason to grant the SCRDA's motion for summary judgment on the Title VII claims.

negative employment action against the plaintiff—such as firing, failing to promote, or effecting an undesirable reassignment—may avoid vicarious liability if it can satisfy a two-pronged affirmative defense. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 765 (1998); *Weger*, 500 F.3d at 718. To succeed in raising the defense, the employer must show that: (a) it exercised reasonable care to prevent and promptly correct any sexually harassing behavior; and (b) the alleged victim unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. *Burlington Indus., Inc.*, 524 U.S. at 766; *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 805 (1998). This two-prong test is known as the *Ellerth*/*Faragher* affirmative defense.

In *Lauderdale v. Texas Department of Criminal Justice,* 512 F.3d 157 (5th Cir. 2007), the Fifth Circuit confronted a situation similar to the one now facing the Court. There, Ms. Lauderdale, a prison guard, sued her employer, the Texas Department of Criminal Justice ("the TDCJ"), for hostile work environment because one of her supervisors, a warden, made several unwelcome sexual advances. *Id.* at 161-62. Ms. Lauderdale complained to her immediate supervisor, and after he failed to address the alleged harassment, she resigned and filed suit. *Id.* at 161, 162. Once her resignation was submitted, the TDCJ investigated Ms. Lauderdale's allegations, resulting in the warden's suspension and probation. *Id.* at 162. Because Ms. Lauderdale suffered no tangible, adverse employment action, the Fifth Circuit allowed the TDCJ to raise the *Ellerth/Faragher* affirmative defense. *Id.* at 164. The court first analyzed the TDCJ's sexual harassment policy and found that the TDCJ had exercised reasonable care to prevent and correct sexually harassing behavior, thus satisfying the first *Ellerth*/*Faragher* prong. *Id.* (noting that the plaintiff never alleged that the TDCJ's policy was insufficient or

unreasonable). The court next analyzed the second prong and found that Ms. Lauderdale's resignation, coming after complaining to her supervisor just once, was unreasonable given that the TDCJ's harassment policy provided multiple avenues of potential relief, and given that the TDCJ responded to Ms. Lauderdale's resignation with a prompt investigation. *Id.* at 165. Thus, the TDCJ was not vicariously liable for its warden's alleged sexual harassment. *Id.*[2]

As in *Lauderdale*, Ms. McCans alleges no adverse employment action and thus the *Ellerth/Faragher* defense is available to T or C and the SCRDA.[3] Also, Ms. McCans does not allege that the SCRDA's sexual harassment policy was insufficient, unreasonable or otherwise deficient. In fact, the SCRDA's policy gave an aggrieved employee two ways in which to complain of sexual harassment and it vowed to investigate all complaints promptly and thoroughly. Accordingly, after Ms. McCans complained to David Martinez in September 2004, he assured her he would resolve the problem, and Mr. Peterson promptly apologized for his behavior, leading Ms. McCans to believe that David Martinez had made good on his promise. Moreover, when Ms. McCans complained again to David Martinez, Mayor Ramsey, and the

---

[2]The facts in *Lauderdale* are in stark contrast to those confronted by the Tenth Circuit in *Walker v United Parcel Service of America, Incorporated*, 76 Fed. Appx. 881 (10th Cir. 2003). The court there held that UPS was not entitled to avail itself of the *Ellerth*/*Faragher* affirmative defense. 76 Fed. Appx. at **7. It recognized UPS was the plaintiff's employer and noted its supervisory employees allegedly subjected her to sexual harassment. *Id*. at **4. When the plaintiff complained to her employers, however, they defended the accused supervisory employees, made excuses for their behavior, and failed to investigate. *Id*. at **6. Since this response did not satisfy the first *Ellerth*/*Faragher* prong, the Tenth Circuit reversed summary judgment for UPS. *Id*.

[3]Though the plaintiff insists that she was "removed" from the SCRDA board, she cites this event as evidence of retaliation for her complaints, and not as an adverse employment action taken during her tenure. (*See* Pl.'s Resp. To Mot. S.J., Doc. #138 at 14). Moreover, the Court believes that the SCRDA's decision to keep Mr. Peterson and Ms. McCans from attending board meetings was a temporary measure aimed to protect Ms. McCans from any further harassment, not to punish her. Indeed, as Ms. McCans readily concedes, despite the board's action, she was not demoted, she did not have her salary reduced, and she was never given a negative job evaluation. (McCans Dep. 469:9-12, 553:21-25, 565:24-566:6).

EEOC in May 2005, the SCRDA board acted by quickly calling a special meeting, commencing an investigation, and keeping Mr. Peterson and Ms. McCans away from each other while the board investigated her complaints. These were adequate responses under the circumstances, and the defendants thus satisfied the first prong of the *Ellerth/Faragher* defense.

The issue on the second prong is whether Ms. McCans unreasonably failed to take advantage of preventive or corrective opportunities provided by her employers. The Court believes that it was unreasonable for Ms. McCans to submit her resignation just ten days after the board began its investigation. The record does not indicate that the board's investigation would fail to remedy the alleged harassment. David Martinez and the SCRDA did not make excuses for Mr. Peterson. On the contrary, each took Ms. McCans' complaints seriously and responded with appropriate action. Further, were it not for Ms. McCans' abrupt resignation, the SCRDA board would have had sufficient time to investigate her allegations. *Cf. E.E.O.C. v. Family Dollar Stores, Inc.*, 2008 WL 4098723 *27 (N.D. Ga.) (finding that an employee who submitted his resignation just one day after reporting harassment did not allow the employer enough time to remedy the situation); *Contreras v. Waffle House, Inc.*, 2002 WL 1477442 (N.D. Tex) (employer offered to take action, but employee never responded and quit five days later). Since T or C and the SCRDA had set up adequate policies to prevent sexual harassment, and their responses to Ms. McCans' complaints were not improper, they cannot be vicariously liable for Mr. Peterson's alleged harassment. *Id.*

As for Eloy Martinez's alleged harassment, neither T or C nor the SCRDA could be expected to address or remedy it further, since neither was his employer and since Eloy Martinez resigned from his position as legal advisor at the board meeting held in response to Ms. McCans'

complaints. Given the foregoing, T or C and the SCRDA's motion for summary judgment on Ms. McCans' Title VII hostile work environment claim is GRANTED.

**II. Wrongful Constructive Discharge Claim Against T or C and the SCRDA**

Count II in Ms. McCans' complaint alleges that T or C and the SCRDA are liable for sex discrimination resulting in her constructive discharge in violation of Title VII. A constructive discharge occurs when an employer allows or participates in discriminatory conduct severe or pervasive enough to make working conditions so intolerable that a reasonable person in the employee's position would be forced to resign. *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 133, 148 (2004) (likening constructive discharge to an extreme case of hostile work environment—"harassment ratcheted up to the breaking point"); *see also Woodward v. City of Worland*, 977 F.2d 1392, 1401 (10th Cir. 1992). Also, as with hostile work environment claims, an employer may raise the *Ellerth*/*Faragher* affirmative defense to vicarious liability on constructive discharge claims in the absence of a tangible, adverse employment action. *Id.* at 133. Finally, "unless conditions are beyond ordinary discrimination, a complaining employee is expected to remain on the job while seeking redress." *Suders*, 542 U.S. at 147.

In this case, since Ms. McCans alleges no negative, tangible employment action, the SCRDA and T or C may avail themselves of the *Ellerth*/*Faragher* affirmative defense. The undisputed facts are that the SCRDA had adopted a legitimate sexual harassment policy, satisfying the first prong of that defense; and the second prong was satisfied when Ms. McCans failed to avail herself of the board's attempt to remedy the discrimination by resigning just ten days after filing a complaint.

Moreover, the Court remains unconvinced that Mr. Peterson's alleged acts exceeded ordinary harassment. The plaintiff did not present specific evidence on the frequency of Mr. Peterson's sexual harassment, nor did she demonstrate that it came in a steady barrage of opprobrious behavior. *See, e.g, Aramburu v. Boeing Co.*, 112 F.3d 1398, 1410 (10th Cir. 1997) (holding that a plaintiff in a Title VII sexual harassment case must "demonstrate more than a few isolated incidents of prohibited conduct, such as a steady barrage of opprobrious comments" to survive summary judgment); *cf. Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1269 (10th Cir. 1998) (hostile work environment harassment occurs when a supervisor's conduct unreasonably interferes with work performance). In addition, when Ms. McCans submitted her resignation, she elected to make it effective over a month later—contradicting the notion that she was "at the breaking point" such that she had no choice but to immediately quit. *See Sebold v. City of Middletown*, No. 3:05-CV-1205 WL 2782527 *14 (D. Conn. Sept. 21, 2007) (unpublished) (finding that an employee's continued willingness to work for seven months after filing a transfer request belied her constructive discharge claim). Thus, the alleged conduct in this case did not exceed ordinary harassment, and Ms. McCans should have remained on the job while seeking redress. *See Suders*, 542 U.S. at 147.

Yet even assuming that Ms. McCans suffered such intolerable discrimination that a reasonable person in her circumstances would be compelled to resign, T or C and the SCRDA are still not vicariously liable for the alleged acts of Mr. Peterson and Eloy Martinez. Indeed, as observed above, their satisfaction of the two-pronged *Ellerth*/*Faragher* affirmative defense persuades the Court to grant the motion for summary judgment on the plaintiff's constructive discharge claim.

**III. Hostile Work Environment and Constructive Discharge Claims Against T or C, the SCRDA, Russ Peterson, and Eloy Martinez and Race Discrimination Claims Against Russ Peterson and Eloy Martinez**

Ms. McCans next sues all the defendants under theories of hostile work environment and constructive discharge stemming from racial animus in violation of Section 1981. *See CBOCS West, Inc. v. Humphries*, 128 S. Ct. 1951 (2008). She also sues Russ Peterson and Eloy Martinez for race discrimination in violation of the Equal Protection Clause and Section 1983. Section 1981 bans race discrimination in "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a) & (b). Section 1983 creates a cause of action against individuals who violate federal law while acting "under color of state law." 42 U.S.C. § 1983. All three claims in this section are premised on alleged race discrimination.

However, Ms. McCans has provided no evidence to support her claims of race discrimination by the defendants. In her deposition, Ms. McCans states unequivocally that she never felt mistreated based on her Hispanic origin. (McCans Dep. 496:10-16, 567:6-11). In addition, in her response brief, Ms. McCans admits without qualification that she never felt discriminated against on the basis of her race or ethnicity. (Plaintiffs' Resp. Doc. # 138). To survive a motion for summary judgment, a non-moving party must bring forth some evidence and it cannot rest its claims on mere allegations. *Anderson*, 477 U.S. at 255. Since Ms. McCans has provided no support for her racial animus claims, the Court treats these claims as abandoned, and the defendants' motion for summary judgment is GRANTED.

**IV. Retaliation Claims Against Russ Peterson and Eloy Martinez**

In her next count, Ms. McCans alleges that Russ Peterson and Eloy Martinez violated her First Amendment rights by retaliating against her for filing sexual harassment and discrimination complaints. In her brief, Ms. McCans alleges two forms of retaliation. First, she alleges that Russ Peterson and Eloy Martinez caused the board of directors to keep her from attending board meetings. Second, she alleges that Mr. Peterson retaliated against her by orchestrating the arrest of her daughter, Ms. Ruiz.

In a First Amendment action against a public employer alleging retribution for speech, the principal question is whether the employee's speech was on a matter of public concern. *Starrett v. Wadley*, 876 F.2d 808, 816 (10th Cir. 1989). Speech is on a matter of public concern if its content is first and foremost of interest to the community at large. *Connick v. Myers*, 461 U.S. 138, 142, 146-47 (1983). The motive of the speaker is essential to the analysis. *Starrett*, 876 F.2d at 816. If the speech is calculated to disclose misconduct relevant primarily to a personal grievance rather than a matter of public concern, it is not protected by the First Amendment. *Id.*

In *Woodward*, several female communications facility dispatchers complained of sexual harassment and alleged First Amendment retaliation claims against their supervisors, who were police officers. 977 F.2d at 1394, 1396. The Tenth Circuit accepted the contention that the plaintiffs had suffered retaliatory acts, but it held that the defendants in *Woodward* were entitled to summary judgment nonetheless. *Id.* at 1403-04. The *Woodward* court reasoned that the First Amendment did not protect the dispatchers' speech because they intended their complaints to address personal grievances, not matters of public concern. *Id.* (finding that the plaintiffs' speech

was calculated to remedy and stop instances of personal harassment, not to comment on the officers' ability to properly discharge their duties).

Such reasoning also applies here. Nothing in Ms. McCans' complaints implicated matters of broad public concern. Her complaints to the EEOC, Mayor Ramsey, Clint Welborn, and David Martinez expressed dissatisfaction with the way Mr. Peterson and Eloy Martinez had treated her; they contained little of interest to the public at large. Indeed, her letter to Mayor Ramsey about Mr. Peterson referred to harassment against her, it mentioned her job, and her inability to "withtake" the harassment. Her letter to Mr. Welborn about Eloy Martinez echoed those sentiments. In short, the essence of these complaints related to personal grievances, and the First Amendment does not protect such complaints.

Moreover, Ms. McCans' claims of retaliation in violation of the First Amendment suffer from additional defects. First, she has presented no evidence that either Mr. Peterson or Eloy Martinez—who was not a member of the board himself and whose attendance at meetings was sporadic—had a hand in the decision to disallow her presence at board meetings until the Peterson issue was resolved. Also, Ms. McCans alleges that her daughters' arrest was a plot by Mr. Peterson to exact revenge for her complaints against him. Yet nothing on the record, other than bald assertions, indicates that Mr. Peterson had any role in the planning or execution of Ms. Ruiz's arrest. On the contrary, the defendants submitted an affidavit from Sergeant James Morgan, the arresting officer from the T or C police department, in which he stated that he never consulted with Mr. Peterson before obtaining an arrest warrant for Ms. Ruiz. For these reasons, the motions for summary judgment of Mr. Peterson and Eloy Martinez on Ms. McCans' retaliation claim are GRANTED.

**V. Sex Discrimination Claim Against Russ Peterson and Eloy Martinez**

Ms. McCans next alleges that her treatment as an SCRDA employee violated her Fourteenth Amendment right to equal protection under the law. Arguing that Mr. Peterson and Eloy Martinez were her supervisors acting under color of state law, Ms. McCans claims that such constitutional violations are actionable under Section 1983. The plaintiff is correct that sexual harassment can violate the Fourteenth Amendment right to equal protection and thus may give rise to a Section 1983 claim so long as the defendant violated the plaintiff's constitutional rights while acting under "color of state law." *Starrett*, 876 F.2d at 814; 42 U.S.C. § 1983. To recover on a Section 1983 Fourteenth Amendment claim, Ms. McCans must establish that, in committing the alleged sexual harassment, the defendants in some way exercised state authority over her. *David v. City and County of Denver*, 101 F.3d 1344, 1354 (10th Cir. 1997).[4]

In *David*, the Tenth Circuit held that a plaintiff's Section 1983 Fourteenth Amendment sexual harassment claim could survive summary judgment even against officers who were not her direct supervisors, so long as the plaintiff could establish that the officers who participated in the alleged harassment had at least some *de facto* supervisory authority over her. 101 F.3d at 1354. Given this precedent, Mr. Peterson is not entitled to summary judgment on this claim. First, Ms. McCans has presented a genuine dispute of material fact as to whether Mr. Peterson subjected her to sexual harassment. Though the defendants argue that Ms. McCans welcomed Mr. Peterson's behavior, a reasonable jury could find that fear of reprisal caused her lack of

[4]In certain instances, even co-employees may be liable under Section 1983 if they exercise *de facto* authority over, and sexually harass, the plaintiff. *David*, 101 F.3d at 1354; *see also Woodward*, 977 F.2d at 1401 (finding that liability under the Equal Protection Clause for sexual harassment must be based on some authority the wrongdoer has over the victim).

resistance. Indeed, Ms. McCans testified that she responded to Mr. Peterson's behavior as she did because she was intimidated and wanted to "stay on his good side."

In addition, based on the rule set forth in *David*, Mr. Peterson was, for purposes of Section 1983, Ms. McCans' supervisor. The defendants are correct to argue that the SCRDA, rather than T or C, was Ms. McCans' direct employer. However, it is also true that Mr. Peterson had an automatic voting position on the SCRDA board and thus could influence Ms. McCans' conditions of employment.

The defendants rely on Ms. McCans' deposition testimony from another case in April 2004, in which she stated that she had no supervisor other than the SCRDA board. (McCans Dep. 5:7-10, April 6, 2004). That testimony, however, does not dispose of the issue here. *David* established that a defendant with some substantive supervisory authority could be liable for sexual harassment, irrespective of whether the plaintiff in fact identified the defendant as a supervisor. *David*, 101 F.3d at 1354 ("in order to establish the state action necessary to support a Section 1983 Fourteenth Amendment sexual harassment claim, the defendant had to be plaintiff's supervisor *or in some other way exercise state authority over her*.") (emphasis added) (internal brackets omitted). Ms. McCans has presented evidence sufficient for a reasonable jury to find that Mr. Peterson had substantive supervisory authority over her. Mr. Peterson's motion for summary judgment is thus DENIED.

Eloy Martinez's motion for summary judgment on this claim, however, should be GRANTED. The Court acknowledges that Ms. McCans has presented certain, fleeting evidence of Eloy Martinez's alleged sexual harassment. Indeed, the record contains references to Eloy Martinez's misbehavior such as Ms. McCans' testimony that he came into her office "at least ten

different times" and said "some not very nice things." (McCans Dep. 197:2-13; 199:3-5). Even if such vague assertions were sufficient to prove actionable harassment, however, no supervisory relationship existed between Eloy Martinez and the plaintiff. Eloy Martinez was not a member of the SCRDA board and he had virtually no practical ability to affect Ms. McCans' work conditions. Despite the plaintiffs' argument that Eloy Martinez's friendship with Mr. Peterson gave him an air of authority, (*see* Pl.'s Resp to Def. Eloy Martinez's Mot. S.J., 7), this is insufficient to create a supervisory relationship. Equating mere association with a supervisor to supervisory authority would be to stretch the *David* decision too far. In addition, Ms. McCans never testified that she felt subordinate to Eloy Martinez, and it was she who actually suggested his SCRDA employment. These facts contradict Ms. McCans' claims of workplace inferiority with respect to Eloy Martinez. Since Eloy Martinez did not harass Ms. McCans under "color of state law," his motion for summary judgment is GRANTED.

**Conclusion**

To summarize, the Court finds that T or C and the SCRDA are entitled to summary judgment on Ms. McCans' Title VII hostile work environment claim. First, the SCRDA does not fall within the definition of "employer" in Title VII. Furthermore, even assuming T or C qualifies as Ms. McCans' employer, she alleges no tangible, negative employment action; T or C exercised reasonable care to prevent and correct sexual harassment; and Ms. McCans failed to take advantage of the corrective opportunities her employers provided. T or C and the SCRDA thus cannot be vicariously liable for the alleged acts of Mr. Peterson and Eloy Martinez under *Ellerth*/*Faragher*. Similarly, T or C and the SCRDA are entitled to summary judgment on Ms. McCans' constructive discharge claim because they implemented an accessible and effective

policy for reporting and resolving sexual harassment complaints, and Ms. McCans failed to avail herself of that employer-provided remedial apparatus.

On all Ms. McCans' claims stemming from racial animus, summary judgment is appropriate because she provided no evidence of mistreatment based on race and thus abandoned those claims.

Finally, on Ms. McCans' claim of gender discrimination in violation of the Fourteenth Amendment and Section 1983, the Court finds that Ms. McCans has presented evidence upon which a reasonable jury could find that Mr. Peterson sexually harassed her under color of state law, as Mr. Peterson had supervisory authority over Ms. McCans for purposes of Section 1983. Thus, Mr. Peterson's motion for summary judgment on this claim is DENIED. Eloy Martinez's motion for summary judgment on this claim, however, is GRANTED because he was not her supervisor and was thus not acting under color of state law. For the reasons set forth above, the defendant Eloy Martinez's motion for summary judgment is GRANTED. The remaining defendants' motion for summary judgment is GRANTED in part and DENIED in part.

## ORDER

A Memorandum Opinion in the above-entitled case was entered this date.

**IT IS THEREFORE ORDERED** that the defendant Eloy Martinez's motion for summary judgment (Doc. # 118) is GRANTED. The remaining defendants' motion for summary judgment (Doc. # 124) is GRANTED in part and DENIED in part.

Dated this 4th day of November, 2008.

BRUCE D. BLACK
United States District Judge